May it please the Court, Kristen Thayer on behalf of Appellant Jack Hessiani. I'd like to reserve five minutes, I'll try to reserve five minutes for rebuttal and I'll watch my time. There are many trial errors in this case that warrant remand for retrial. I'd like to focus today on the Rahif issues and the Batson challenge, unless of course the Court has questions on other claims. So first getting to the Rahif errors, Rahif errors, I apologize. The Benamor decision that the Court asked the parties to address does not control Hessiani's case. It's legally and factually distinguishable in material ways. Turning first to the legal distinctions, Benamor only challenged the sufficiency of the evidence, which as this Court knows is an exceedingly deferential standard, that if any record in the, if any evidence in the trial record would support conviction with any reasonable jury, then the claim is not met. Hessiani has challenged whether the indictment was charged defectively and whether that's a fatal defective, whether it's a fatal defection. And he has also challenged the jury instruction error. And they're both, both claims are based on the lack of the Rahif mens rea element being either charged in the indictment or to the jury as something they must find beyond a reasonable doubt. So legally, Benamor does not have the same framework as this Court will be deciding Hessiani's claims. And that turns to the factual distinguishing. There's many reasons that the case, Benamor is factually distinct from Hessiani. Number one, there's no stipulation in Hessiani's case. There was no stipulation about the prior conviction. It's somewhat rare. I think it's usual that defendants will stipulate to their convictions. That's not present here. Hessiani did not have any felon in possession of either firearm or ammunition convictions. That was very significant to the Benamor Court, that there was not one but two such convictions. So at the least, that foreclosed any sort of Rahif claim for that defendant. Number three, in Hessiani's trial, the government admitted a waiver that it argued Mr. Hessiani signed, saying that he was not convicted of any crimes that would legally prohibit him from, I believe the word was using a firearm? I don't think it says that. So this is a different issue, right? So Rahif focused for sure on whether the defendant knew he was a felon. But it's sort of a different question whether the defendant knew that he couldn't prohibit a, couldn't possess a firearm because he was a felon. That's a step further. Are you arguing that we should interpret Rahif as requiring both things? No, Your Honor. I'm just arguing that the evidence in this case is unique, and that waiver that the government highlighted many times at the trial, you can draw many inferences from it. It's not present in most cases that a defendant has represented, I can possess firearms, which could lead to the inference that I don't have convictions that prevent me from doing so, I haven't been punished, convicted of an offense punishable by a term exceeding one year. I'm not saying that it is. He clearly was convicted of crimes that were punishable by more than one year. Yes, he was. But the end, just as the Rahif defendant was not, his immigration status prevented him from possessing firearms. That's not at issue. It's whether the record in this case demonstrates that Hessiani had that knowledge. It's what he knew, not what the actual facts. I could imagine the argument that he didn't know felons were prohibited from possessing firearms. But it's hard for me to imagine how your client could not know he was a felon. Well, the 922G1 provision, the element, is that he was convicted of an offense punishable by a term exceeding a year. It doesn't use the word felony. Felony is obviously how we commonly refer to this felony possession. But it's not the actual element. So it would be whether Mr. Hessiani knew that he had a conviction where he was, where he could have been punished more than a year. That's not present here, which brings me to my other distinguishing fact in this case, that the only properly admitted judicial records of his prior convictions were sentencing minutes in a probation order about a suspended sentence, a suspended imposition of judgment and sentence, where he was placed on probation and didn't serve any time. I believe it was 270 days credit time served, so less than a year, and placed on probation. He's precisely the type of defendant that could run this defense. We were prohibited from even exploring or investigating or presenting any of this evidence pre-Raheif, because this Court's Insland decision recognized that that was not an element, so it wouldn't have been legally relevant to explore at trial. But now that we know in Raheif that it is an element, Hessiani has just a unique set of facts that, while he does have felony convictions, they're not of the type recognized in Benamor that would foreclose the Raheif defense. Which turns to the prejudice in this case. The prejudice for the defective indictment and the jury instruction error, they overlap substantially. For the defective indictment, he didn't have notice of this element. The way the indictment is charged, it does not track the statutes, which this Court has said can sometimes cure a defective indictment if it tracks the statutes. The statute, the indictment only ties knowingly to the possession element. Not to the conviction. And that is an error that prejudiced Hessiani because he is the type of defendant and this is the type of case where a Hessiani or where, I apologize, where a Raheif defense could be presented to a jury. And for the same reasons, the jury, this Court cannot be assured that the jury in this record, if it had been instructed that it must find beyond a reasonable doubt that Hessiani knew he was a felon, that, sorry, that knew he was convicted of a crime punishable by more than one year. There's enough in this record to put that into doubt and conflicting evidence on the matter. Kennedy. Pardon me. Educate me. He pleaded guilty to an insurance fraud violation, which has a, he could be sentenced to more than one year. He was sentenced to five years of suspended sentence. Yes. Educate me as to why he didn't know that was a felony. Because Raheif acknowledges that a defendant who maybe is convicted of a felony that could be punished by more than a year, but then placed on probation and not, did not serve time over a year, may not have the mens rea. That's what the Supreme Court said in Raheif. That that is the type of defendant that could avail themself of this mens rea defense and that the government would then have to present evidence to convince a jury that he did, in fact, know that he was convicted of a crime punishable by more than one year. Of course, this case, it makes sense that the parties weren't disputing this issue because, or weren't contesting and arguing because it was legally irrelevant. It would have been improper for Hessiani to try to ask the jury to acquit him on a pre-Raheif, so we are, we are sort of dealing with a record where everyone didn't think this was an issue and now we know it is. So I would say that factors in favor of Mr. Hessiani because he wasn't able to put into the record. Because he didn't think of it and Raheif did. Exactly. And so, I mean, that could factor into whether he testifies or not. It's his knowledge. It's just, it's sort of a new, a new way to maybe try this case. And because the record in this case is not like Benamor and, in fact, leaves open the possibility that, more than a possibility, that Hessiani has never served over a year in prison. Again, why is this case not like Benamor? It's not like Benamor because there's no stipulation as the prior conviction here. There's no felon in possession of firearm or ammunition convictions. There's the waiver that could go either way as to whether, what his knowledge was about his prior convictions. And that he had at least two suspended, that sort of, the California suspended in position of judgment and placed on probation for felonies. And then if you look at the other felonies, he's only served, there's three others, he only served ten months for those three felonies. So he just is the type of defendant that the Supreme Court was contemplating in Raheif. And it meets the standard for dismissal of the defective indictment. Or in the alternative for relief under the jury instruction error for a retrial. So I'd like to turn quickly to the Batson challenge, unless the Court has further questions. Scalia. As you wish. First, for the Batson error, the government proposed that the education status of juror Mr. T.O. justified its strike. That does not pass a comparative juror analysis. The government doesn't attempt to argue that it does. And that's problematic, that one of the three reasons the government proposed it's not even arguing is justified by the record. The district court did not address that reason. And that's part of the reason that this Court should apply de novo review. Excuse me. The issue that was presented was he's very young, he's inexperienced, he's unemployed, and they preferred to have someone with life experiences. And the record shows that the jury made up, had a very average high age. It looked like that the prosecution got exactly what they were trying to get to. Without, and the trial judge who has to look at the people and decide who's telling the truth or not, we don't, we just have a bunch of words, found that that was inappropriate. How could we turn that over? Because the government, because this Court and the district court have to look at the totality of the relevant facts, including all of the reasons provided. Sure, we have to look at it. But then we have to make a decision with the judge. And we have to defer to the judge because the judge is the one who's got the feel for what's going on in the court. We give them a little deference here. Just turning it over seems to me to be kind of strange at this point. Maybe you could help me with that. Yes, Your Honor. Under Alanis and Alvarez-Ulloa, this Court conducts de novo review when there are insufficient findings on the third prong, the third step of Batson. And that's what we submit should occur here. The Court said he was satisfied with the government's explanations but didn't explain why the Court accepted those reasons as related to the case, especially the education status reason, which the defense counsel had pointed out is not supported by the comparative juror analysis. The government never explained. But wasn't, I mean, the Court did say, I'm satisfied. Isn't that a step three ruling saying, I believe you, that you're not discriminating? I would say it's, it is perhaps better than what happened in Alvarez-Ulloa and Alanis. It's that those courts said plausible. But it still doesn't provide this Court with a record as to why the Court believed. But doesn't the Supreme Court's case in Snyder v. Louisiana tell us that we don't need it to be anything more than a cursory step three ruling? I'm sorry, Your Honor. Which case is this? I think Snyder is the name of it. Snyder. I'm not aware of that case. But if that's true and this Court would like to choose to apply a plain error or, I'm sorry, clear error, the decision is still clearly erroneous because Hessiani only has to prove by preponderance of the evidence that race was a substantial motivating factor, not the sole. So there could be some, the age, the unemployment aspect, if the Court accepts those reasons under a comparative juror analysis. Those could be reasons. But the very pretextual reason of education status. So could I ask you about that one? Oh, sorry. Judge Wallace has a question. I'm somewhat amazed by this. Usually there's an objection made. And we have, I mean, the defense lawyer is there. The defense lawyer sees what's going on. So they object. And then we are able to test that. The judge who's presiding gets to respond to it. Here, we just sort of sandbagged the district judge because he's never advised as is in all other cases where it's waived that the district, that the lawyer thinks there's a problem. Have we ever dealt with that issue? Well, I would submit the record in this case, the defense counsel did say that at least the education status reason is not supported by the record. The government did not contest that. The government just said it's a combination of all three and moved on and sort of deflected by saying, well, there's other black jurors that I have not struck yet. And that's problematic that the prosecutor's statements indicate that he believed that if he's – that he could not be challenged by striking one black juror. That is not the law. Batson said that's not the law. In this case, this Court and the Supreme Court has reaffirmed multiple times that it doesn't have to be a pattern. And even one racial strike can be enough. And – Can I ask you about the education basis? Yes. Because when I was trying to read what happened, it seems that this juror who was struck was actually studying criminal justice, which seems like actually kind of a relevant reason to strike him potentially. And I'm wondering why when the prosecutor says education, we shouldn't read that to mean education studying criminal justice. Because right after the prosecutor said education status, defense counsel said, but he has an associate's, jurors have some with high school only, some with master's. So that doesn't appear to be something that distinguishes this juror. The government's response was it's a combination of all three and moved on. So the government never said it's the type of degree, it's the type of studies. They just said status. And when defense counsel said an associate is not unique, the government didn't offer any further reasoning or clarification. And the government has the burden to put forth clear reasons. Otherwise, the record will not be clear and it shows an inference of discrimination. I see I'm almost out of time. Thank you, Your Honor. May it please the Court, Bill Reed for the United States. Under either a clear error or de novo standard of review, the district court correctly found that the government's reason for striking or exercising a periphery strike on a prospective juror was not racially motivated. When this court reviews whether a prosecutor's reason for striking a prospective juror was racially motivated, the decision largely depends upon or largely rests on the district court's assessment of prosecutorial credibility, which is a factual finding this court ordinarily gives great deference to. Here, the record shows that the district court did, in fact, meaningfully review the reasons given by the prosecutor for exercising the perimetry challenge to the prospective juror. In fact, the district court did not, as counsel previously indicated, the district court did not initially accept the prosecutor's first response that there was no pattern established and required the prosecutor to go further. So the district court didn't rubber stamp the prosecutor's… But the district court didn't also ask the prosecutor what he meant by educational status. Did he mean that he was too educated and we want dumb people in the jury? That would be one position. That is not racially discriminatory. Did he say educational status is relevant because he's taking criminal justice and criminal justice students tend to be anti-prosecution? Again, not a racial basis. He didn't explain what he meant by educational status. That is true, Your Honor. The prosecutor didn't give additional explanation, but he sized it up in terms of this was not a prospective juror who had the life experiences. Educational component was one facet of the prosecutor's concern, but the life experience and the social media role that the social media played in the case and the district court made its own observation. But it was the district court who said the thing about social media, right? Did the prosecutor say anything about that? Your Honor, I believe the prosecutor did initially mention it, that this was a juror, I'm paraphrasing, who didn't have the life experience to judge the case and the role that social media would play in the defense of the case. And the district court observed that, I'm paraphrasing, that the juror did react differently, somewhat differently. I guess it is connected to the life experience point, right? You're right. Yes, Your Honor. Here, the district court did, though, meaningfully consider the prosecutor's reason. This was a juror who the prosecutor felt did not have the life experience. It was not someone they were comfortable with for those reasons. It's when you consider the average age of the other jurors with life experience that the prosecutor was looking for. This is a factual finding that the district court made, and this court should give deference to that. It's hard for us to tell from this record how old these jurors were, right, and whether there were other jurors who were a similar age to this struck one. I'm sorry, Your Honor? It's hard for us to tell from the record we have here how old the other jurors were. Your Honor, I believe that if, in the excerpts of record, that there are, and it may be part of the sealed excerpts, that the jurors' ages and names were given, and that you can, that the court can, if you cross-reference that, get the age of the jurors. But it's hard to tell who the government accepted and didn't. I mean, there's kind of a lack of lining up of who was who here, isn't there? Yes, I would concur, Your Honor. But the age, but the ages can be determined, and that's, that can be, that's something that can be determined, the ages of the jurors. But we don't really know whether the government accepted other jurors who were the same age. I think, I think, Your Honor, I think we do. I think that the average age of the 12 that were chosen, the average age was 54, I believe. But we have to just do a statistical probability to figure out there must, that means there weren't any young ones? I believe that the, I believe the youngest was 36, I believe, if I. Who was, who wasn't struck? Yes, Your Honor. It wound up on the panel. And how can we tell that? Like where, which pages of the record do we put together to be able to tell that for sure? One moment, Your Honor. It's, if I could just have one moment. It seems like at SER 798 and 804, I think the government did strike two young people. But then how do we know that there weren't some left? I'm sorry, Your Honor. It took me a moment to. Yes. The excerpts of record 800 and 804, the 12 jurors ranged in age from 36 to 81, and the average age between those two extremes, 36 and 81, would be 54. In contrast, the challenge juror was 22. But like page 804, there is a juror who's 22, one who's 22, another who's 22, another who's 22, another who's 20. So we don't think the government removed them all, do we? The record's not clear as to, it's only clear as to what, when the dust settled, what, who was on the panel, the average age. The record's not clear enough to address who was removed other than this one that was challenged. So, if we thought there needed to be more factual development here, are there more records anywhere? Like, would it be possible to have a remand to figure out more about what happened with this voir dire? Your Honor, only, my understanding, only in the sense of what the district court may have institutionally have in its recall, in its records or any notes. But I don't believe in any of the records I've seen from the jury selection process that would show that. Moving on, unless there are any other questions about the Batson issue, with respect to the defendant has to show that the jury instruction, the incorrect jury instruction, was that there was a reasonable probability that the jury would not have found him guilty with the correct jury instruction. Here, the evidence shows that the defendant, well, the jury would have found that he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year, a felony. In this case— What's the standard of review for us? Is it de novo or is it standard abuse of discretion or is it clear error? This is before the court on plain error. It was not raised— Plain error. Yes, Your Honor. And I would submit that, at the very least, the fourth prong of plain error cannot be met by this defendant. He cannot establish that there was—that it seriously affected the fairness, the integrity, or the public reputation of the proceedings. The jury, given the evidence in this case where the government was required to tender evidence of his prior convictions, an unusual situation as mine. But Rahafe added this element of him knowing he was a felon. And your opposing counsel is arguing that he never actually served a term of prison for more than a year, so maybe he didn't know that he ever could have been forced to do that. So what is your response to that? That is certainly a far-fetched possibility, given the judgment, the abstract of judgment, where the California court sentenced him to three years' imprisonment. He may not have served it, but we do have that evidence. And also his other prior conviction where he—ER 60—excerpt of record 606. It was documentation of—a recitation of his rights. He initialed a document indicating he understood the maximum punishment he could receive would be a fine of $10,000 and or a sentence to state prison of five years. Under that—with this evidence, there's really no reasonable probability, and that's the standard. And the— Is it your argument that Mr. Hessiani is charged with a knowledge of the law that if he's vulnerable to a prison sentence of more than one year, he will be considered to be a felon? Or does Rehaith tell us that you've got to show more than that? You've got to show some subjective knowledge by the defendant that he is a felon? If I could address it, I think we're on the same page, Your Honor. The government must show that, after Rehaith, that a defendant knew that he or she had been convicted. Subjectively knew or subjectively knew? Subjectively. Subjectively. The government must prove, after Rehaith, that a defendant subjectively was aware that he or she had been previously convicted of a crime. And where the defendant doesn't admit that he knew he was a felon, how do you prove that? Well, I believe Rehaith says, the Supreme Court says we don't offer any suggestions how to do it, but the government's required to do it. Here, though, in this case, it was accomplished through the documentation of two prior felony convictions, one with an abstract of judgment indicating he'd been— And either of those felony convictions that were approved to the jury, was the word felony used? No, Your Honor, but the statute does not use the word felony either. It's a term of art. What you're saying is that every citizen walking around should know, because he's charged with the knowledge of the law and ignorance of the law, is no excuse that any term over one year is a felony term. I don't believe the law requires such precision, only that the person had been— the person may or may not know that it is, in the vernacular, characterized as a felony, but the person has to know that they've been convicted of a crime punishable by a term of imprisonment exceeding one year. Doesn't Rehaith say they have to know they're a felon? It's the felon status that triggers the restriction on the firearms. I think they have to know they're a felon. And a crime punishable by a term of imprisonment exceeding one year under the statutory— Is the definition of that. —definition is a felony. So could I ask you this ER-606 that you just pointed us to, was this presented to the jury? ER— ER-606. It's where he initials, I'm being convicted of an aggravated felony. Was that actually presented to the jury? Yes, Your Honor. That's my understanding. That went along with all the other conviction documents, the abstract of judgment, showing he'd been sentenced to prison in California for three years. This ER-606, I believe, went along with his conviction for insurance fraud, where he was given a probationary term, which converted into a judgment. Unless there are any other questions about the Rehaith issue, the other issue— There are a lot of moving parts in this appeal. I'll just address the documents themselves, since Your Honor mentioned them, the objection to the documents, one that they were not objected to at trial on the same grounds that they— Well, counsel, your learned friend did not raise any other issues but Batson and Rehaith. I'll submit it unless the Court has any other questions. All right. Thank you, Your Honors. First, to Judge Friedland, your question about further exploration of the record on the Batson issue. It's my understanding the District of Nevada does written peremptory strikes, so I believe there should be some—I don't know if it's a chart or what sort of form that the judges use. That should be in the court clerk's office, I believe, or with the courtroom deputy. Are you speculating or you know this is? I've seen it in other cases. I don't know in this case. In the same court? In the same court. With a different judge, but the same court. And it appears that the judges follow a similar format when they do off-record written peremptory strikes. You mean you have been able to secure information that all the judges follow this process? No, but from my reading of this record, it tracks what's happened in other cases where they go off-record to do— But there's nothing in this— —peremptory strikes while the jury sits in the box. There's nothing in this record that shows us that. There is not. But if Judge Friedland said if there are lingering questions by this court that are in this case, then the court has the discretion to order and has done before. And quickly, because I realize I'm over my time, as to the insurance fraud conviction, yes, there is an initial that appears to be Hessiani's against next to a 5-year stat max. In the same— But I'm more worried about the one that says since I'm being convicted of an aggravated felony, I could be deported. That seems like he's signing, I am being convicted of a felony, which is the thing we have to show he knew. I agree with counsel that it's not the word felony, that 922G1 uses the word crime-punishable by a term exceeding one year. So aggravated felony does not get you there. But that same document states that the, quote, it says at sentencing that the rendition of judgment and imposition of sentence is suspended. So while he's signed, it appears he has signed paperwork acknowledging a statutory maximum, the sentencing said the judgment was never entered and he was placed on probation. That's how the California law works. Suspended means that we're not entering judgment, and then if you follow your conditions of probation, we won't enter judgment. But if you don't follow your conditions of probation, then we will enter judgment and you'll go to prison for 5 years. Yes, Your Honor. And the record indicates he did successfully complete probation. But that doesn't take away the fact that he knew that he was liable for 5 years in prison. But the exact words used were rendition of judgment and imposition of sentence is suspended. We as lawyers know that's a very technical set of procedure in California. But for Hessiani, a layperson might hear the words rendition of judgment suspended. But line 10, so I mean, okay, one, there's line 11-something is the thing about aggravated felony. But line 10 says, I understand that by pleading no contest, the maximum punishment I could receive would be state prison of 5 years. Yes. And he signs that. Yes. So why does that not show that he knows he could be in prison for 5 years? Because then what happened at sentencing was the rendition of judgment and imposition of sentence was suspended. So he wasn't actually to a layperson, that would mean they weren't convicted of that And he was placed on probation. This is, as I understand, I submit that it's conflicting evidence. And at best, conflicting evidence does not show overwhelming and strong evidence on this matter, which is what under Al-Farhain this Court requires when it's this type of error of a missing element in a jury instruction or an indictment. So given the nature of the error. But since we're on plain error review, how do we think that this is not good enough for the government on plain error review? Because the plain error review is this is strong and for the substantial rights prong, it's strong and convincing evidence is what can overcome the right, the violation of the defendant's rights. So if there's not strong and convincing evidence, then it does impact the defendant's rights. And because it's a missing element, it's the type of error that warrants relief under the fourth prong. Thank you so much, Your Honor. You've taken your best time. Thank you very much. Thank you. And that concludes our calendar for today. I'd like to adjourn on this September 11th in memory of the victims of the attack on New York and especially in memory of the very valiant and courageous first responders who sacrificed their lives in attempting to save those victims, some of which I've known. So thank you very much, and the court is adjourned.
judges: Wallace, Bea, Friedland